UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | 09-398 |
| DARRYL SHIELDS | SECTION: "J" |

## ORDER & REASONS

Before the Court is a *Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) Under the First Step Act* **(Rec. Doc. 602)** filed by Defendant, Darryl Shields, and an opposition (Rec. Doc. 620) filed by the United States of America. The Defendant also filed a reply. (Rec. Doc. 623). Having considered the motion and legal memorandum, the record, and the applicable law, the Court finds that the motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

On September 2, 2011, Defendant, Darryl Shields pleaded guilty pursuant to a plea agreement to participating in a Racketeer Influenced and Corrupt Organization ("RICO") conspiracy; conspiracy to distribute 280 grams or more of cocaine base ("crack"), a quantity of cocaine hydrochloride, heroin, and marijuana; and murder in aid of racketeering. Shields was a member of the Josephine Dog Pound Gang which operated in Central City in New Orleans. Pursuant to his 11(c)(1)(C) plea agreement, the United States agreed not to pursue the death penalty, and Shields was sentenced to life imprisonment.

1

Shields participated in three murders, and in two of these, he was the lone shooter. One of Shields' victims was Herbert Lane, an innocent bystander shot as Shields and his accomplice attempted to shoot a rival gang member. Shields was also charged with the murder of Kevin Williams, but these charges were dismissed pursuant to the plea agreement. Shields was also involved in the murder of Ronnie Meade. Shields' co-defendant, Michael Anderson, robbed Ronnie Meade at gunpoint. After Mr. Meade reported Anderson to the police leading to his arrest, Shields facilitated a call between Anderson and Mr. Meade wherein Anderson threatened Mr. Meade with death if he did not recant his story. Shields also informed a co-conspirator, Tony Simmons, that Anderson wanted Meade killed if he did not recant. Simmons later killed Mr. Meade in front of his ten-year-old son while Shields watched. Shields' base offense level under the United States Sentencing Guidelines was calculated at a staggering 43. However, Shields also received a two-point enhancement for Obstruction of Justice "because he coerced or persuaded a witness to give false testimony at a state criminal trial" due to his actions involving Mr. Meade. (Rec. Doc. 620, at 4).

Shields filed the instant motion for sentence reduction, arguing in part that, although he was over 18 at the time of his crimes, the rationale in *Miller v. Alabama* should be extended to his case. 567 U.S. 460 (2012).

## LEGAL STANDARD

"A court, on a motion by the [Bureau of Prisons ("BOP")] or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Chambliss*, 948 F.3d 691, 692 (5th Cir. 2020) (quoting § 3582(c)(1)(A)(i)). To meet the exhaustion requirement, a defendant must submit a request to "the warden of the defendant's facility" for the BOP "to bring a motion [for compassionate release] on the defendant's behalf." § 3582(c)(1)(A). If the request is denied, the defendant must pursue and exhaust "all administrative rights to appeal." *Id.* Alternatively, the requirement is considered satisfied after "30 days from the receipt of such a request by the warden." *Id.*

Once a defendant has exhausted her administrative remedies, the Court may then reduce the defendant's term of imprisonment if it finds that extraordinary and compelling reasons warrant a sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A). This reduction must be consistent with applicable policy statements of the Sentencing Commission. *Id.* Section 3582(c)(1)(A)(i)'s use of "extraordinary and compelling" captures the truly exceptional cases that fall within no other statutory category and sets "an exceptionally high standard for relief." *United States v. McCoy*, 981 F.3d 271, 287-88 (4th Cir. 2020). The defendant has the burden to demonstrate the extraordinary and compelling reasons supporting her release. *See United States v.*

3

*Washington*, No. CR 16-19, 2020 WL 4000862, at *3 (E.D. La. July 15, 2020). The U.S. Sentencing Guidelines provide that a reduction should be granted only if "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2) (p.s.).[1] If the Court grants a sentence reduction, it may impose a term of supervised release with conditions, including home confinement, "that does not exceed the unserved portion of the original term of imprisonment." § 3582(c)(1)(A).

## DISCUSSION

Shields asserts, and the Government does not dispute, that Shields has exhausted all administrative requirements to seek compassionate release. (Rec. Docs. 602, at 4 and 620, at 8). Therefore, the Court will now turn to the merits of Shields' motion.

Under 18 U.S.C. § 3582(c)(1)(A) as modified by Section 603 of the FIRST STEP Act, a sentencing court may reduce an imposed sentence upon a showing of either extraordinary and compelling reasons or that the defendant is at least 70, has served at least 30 years in prison, and is no longer a danger to any other person or his community. As Shields is less than 70 years old, he must demonstrate that there are extraordinary and compelling reasons for his release. "Congress has not defined what constitutes 'extraordinary and compelling reasons' for a sentence reduction[.]" *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021). The Sentencing Commission, however, provided four categories of extraordinary and compelling reasons in the

---

[1] Policy statements are binding in § 3582(c) proceedings. *United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011).

commentary to its only corresponding policy statement: (A) medical conditions; (B) advanced age; (C) family circumstances; and (D) other reasons as determined by the Director for the BOP. U.S. SENT'G GUIDELINES MANUAL § 1B1.13 cmt. n.1 (A)-(D) (U.S. SENT'G COMM'N 2021). Shields does not attempt to argue that his circumstances warrant a sentence reduction due to his medical conditions, advanced age, or family circumstances. Therefore, the Court must determine whether the other reasons he puts forward are sufficient to justify a reduced sentence.

Shields argues in part that his sentence should be reduced because his "chronological age belied his immaturity, impulsivity, and failure to appreciate the risks and consequences of his actions." (Rec. Doc. 602, at 18). Shields points to *Miller v. Alabama* in support of this argument. 567 U.S. 460. In *Miller*, the United States Supreme Court invalidated mandatory life sentences without the possibility of parole for juvenile offenders. *Id.* at 465. The *Miller* Court reasoned that mandatory life sentences prevent sentencing courts from taking into account the "mitigating qualities of youth." *Id.* at 476. The court also relied on science showing that juvenile brains are not fully developed and therefore a child's moral culpability is lessened. *Id.* at 471. Shields was only 18 and 19 years old at the time of the commission of his crimes. Therefore, he reasons that the rationale from *Miller* should be extended to his case because 18 and 19-year-olds are also still undergoing brain development. Regardless of whether Shields is correct in asserting that his brain was not fully developed at the time of his crimes, *Miller* is inapplicable to his case. Shields was no

5

longer a juvenile at the time of his crimes, and *Miller* only applies to juveniles. Although it is tragic that Shields became involved in criminal activity at such a young age, the Court cannot reduce his sentence on these grounds.

Similarly, Shields' upbringing cannot justify a reduction in his sentence. Shields describes a childhood which was "rough and poverty stricken." (Rec. Doc. 602, at 18). Shields' father was not involved his life, and his mother was a "struggling single parent of five." *Id.* Without role models to turn to, Shields states that he sought guidance from those around him in his neighborhood who "often operated on the criminal fringe of society." *Id.* No doubt Shields' early exposure to drugs and violence led him down the path that eventually culminated in the crimes for which he is now imprisoned. However, as tragic as this reality is, Shields' upbringing is does not serve as a legal basis for a reduction in his sentence. Furthermore, as the Government points out, Judge Feldman already considered Shields' upbringing in his sentencing. (Rec. Doc. 620, at 14).

Shields also argues that this Court should "consider the need to avoid unwarranted sentence disparities amount defendants with similar records who have been found guilty of similar conduct." (Rec. Doc. 602, at 17). Shields asserts that his co-defendants "who took part in numerous criminal conduct [sic], including murder, with Shields received relatively light sentences because of their cooperation with the government." *Id.* In response, the Government points out that although Shields received the longest sentence out of his coconspirators, Shields is also the only

6

defendant who committed more than one murder.[2] (Rec. Doc. 620, at 13, 14). Additionally, the Government asserts that "Shields had an equal opportunity to cooperate with the government, but he adamantly opposed cooperation and closed that door on himself." *Id.* at 14. Therefore, these factors do not support a reduction in Shields' sentence.

Shields also argues that his behavior while incarcerated supports his request for a sentence reduction. Shields points out that he has "completed hundreds of hours of educational courses, and had completed a substance abuse and a [sic] behavioral therapy programs." (Rec. Doc. 602, at 18). Although these are positive steps, they are not enough to warrant a reduction of Shields' sentence. Shields' was involved in three murders, and he attempted to murder several more individuals before he was finally apprehended. His positive rehabilitative steps alone are not enough to constitute extraordinary circumstances justifying his release. *See* 28 U.S.C. §994(t).

---

[2] Michael Anderson also received a life sentence for his role in the murder of Ronnie Meade, but his sentence was later reduced due to the substantial assistance he provided to the government. (Rec. Doc. 555 *SEALED*).

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Darryl Shields' *Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) Under the First Step Act* **(Rec. Doc. 602)** is **DENIED.**

New Orleans, Louisiana, this 25th day of September, 2023.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE