UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 09-398 |
| DARRYL SHIELDS | SECTION: "J" |

### ORDER AND REASONS

Before the Court is a *Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582 Based on Changes to the Guidelines Related to Youth, the First Step Act, the Extraordinary Rehabilitation by Mr. Shields, His Age at the Time of the Crime, and the Fact That He Is No Longer a Threat to Public Safety* **(Rec. Doc. 683)** filed by Darryl Shields. The United States of America opposed the motion (Rec. Doc. 689), and Mr. Shields filed a reply (Rec. Doc. 691). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED**.

### FACTS AND PROCEDURAL BACKGROUND

In August of 2010, Darryl Shields and seven co-defendants were charged in a twenty-four-count superseding indictment related to their involvement in the Josephine Dog Pound Gang, which operated in Central City, New Orleans. On September 2, 2011, and pursuant to a plea agreement, Shields pleaded guilty to four of the counts against him: participating in a Racketeer Influenced and Corrupt Organization ("RICO") conspiracy; conspiracy to distribute 280 grams

1

or more of cocaine base ("crack"), a quantity of cocaine hydrochloride, heroin, and marijuana; and two counts of murder in aid of racketeering. As part of Mr. Shields's 11(c)(1)(C) plea agreement, the United States agreed not to pursue the death penalty,[1] and instead determined that a life sentence would be appropriate.

During his time with the Josephine Dog Pound, Shields participated in three murders and was the lone shooter in two of them. One of Shields's victims was Herbert Lane, an innocent bystander that Shields shot when he and his accomplice attempted to shoot a rival gang member. The Government also charged Shields with the murder of Kevin Williams but dropped this charge pursuant to the plea agreement. Additionally, Shields was involved in the murder of Ronnie Meade, whom Shields's co-defendant, Michael Anderson, had robbed at gunpoint. Ronnie Meade reported Anderson to the police, leading to his arrest, and during a phone call that Shields facilitated between Anderson and Mr. Meade, Anderson threatened to kill Mr. Meade if he did not recant his story. Shields also informed a co-conspirator, Tony Simmons, that Anderson wanted Meade killed if he did not recant. Even though Mr. Meade ultimately recanted his story, Simmons killed him while Shields and others watched, and it was Mr. Meade's ten-year-old son who found him dead after the shooting.

---

[1] The Government also agreed to drop one of the three murder charges, along with fifteen other counts, against Mr. Shields.

Prior to sentencing, Shields's base offense level under the United States Sentencing Guidelines was calculated at a staggering 43. Shields also received a two-point enhancement for Obstruction of Justice "because he coerced or persuaded a witness to give false testimony at a state criminal trial" due to his actions involving Mr. Meade. (Rec. Doc. 689, at 4). Shields filed his first motion for sentence reduction in May of 2022, and the Court dismissed it without prejudice for failure to exhaust administrative remedies. Shields then filed the second motion in March of 2023. Again, the Court denied the motion, and the Fifth Circuit affirmed the decision on appeal. In his March 2023 motion, Shields argued in part that, although he was over 18 at the time of his crimes, the rationale in *Miller v. Alabama* should be extended to his case. 567 U.S. 460 (2012).

In the instant motion, Shields urges the Court to grant his motion for a sentence reduction based in part on Amendment 829 to Section 5H1.1 of the Sentencing Guidelines. More specifically, Mr. Shields claims that his "youth at the time of the offense, the moral character he has developed over the intervening decades, the severity of his sentence, the excessive length of the sentence he has served, as well as the living conditions he was under constitute extraordinary and compelling circumstances warranting a reduction of this sentence." (Rec. Doc. 683, at 7). Conversely, the United States opposes the

3

motion, claiming that in the instant motion, Shields has simply re-urged the arguments he made in his earlier motion for a sentence reduction.

## **LEGAL STANDARD**

"A court, on a motion by the [Bureau of Prisons ("BOP")] or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Chambliss*, 948 F.3d 691, 692–93 (5th Cir. 2020) (quoting § 3582(c)(1)(A)(i)). To meet the exhaustion requirement, a defendant must submit a request to "the warden of the defendant's facility" for the BOP "to bring a motion [for compassionate release/sentence reduction] on the defendant's behalf." § 3582(c)(1)(A). If the request is denied, the defendant must pursue and exhaust "all administrative rights to appeal." *Id.* Alternatively, the requirement is considered satisfied after "30 days from the receipt of such a request by the warden." *Id.*

Once a defendant has exhausted his administrative remedies, the Court may then reduce the defendant's term of imprisonment if it finds that extraordinary and compelling reasons warrant a sentence reduction. § 3582(c)(1)(A)(i). This reduction must be consistent with applicable policy statements of the Sentencing Commission. § 3582(c)(1)(A). Section 3582(c)(1)(A)(i)'s use of "extraordinary and compelling" captures "the truly exceptional cases that fall within no other statutory category" and sets "an exceptionally high standard for relief." *United States v. McCoy*, 981 F.3d 271,

287–88 (4th Cir. 2020). The defendant has the burden to demonstrate the extraordinary and compelling reasons supporting his release. *See United States v. Washington*, No. 16-19, 2020 WL 4000862, at *3 (E.D. La. July 15, 2020) (Morgan, J.). The U.S. Sentencing Guidelines provide that a reduction should be granted only if the "defendant is not a danger to the safety of any other person or to the community." U.S. Sent'g Guidelines Manual § 1B1.13(a)(2) (U.S. Sent'g Comm'n 2025) (p.s.).[2] If the Court grants a sentence reduction, it may impose a term of supervised release with conditions, including home confinement, "that does not exceed the unserved portion of the original term of imprisonment." § 3582(c)(1)(A).

## DISCUSSION

Shields asserts, and the Government concedes, that he has exhausted all administrative remedies to seek compassionate release. (Rec. Docs. 683, at 26–27, and 689, at 10). Therefore, the Court will now turn to the merits of Shields's motion.

Under 18 U.S.C. § 3582(c)(1)(A), as modified by Section 603 of the First Step Act, a sentencing court may reduce an imposed sentence upon a showing of either extraordinary and compelling reasons or the following: that the defendant is at least 70, has served at least 30 years in prison, and is no longer a danger to any other person or his community. Because the second situation does not apply to Mr. Shields, he must demonstrate that there are extraordinary and compelling reasons for the Court to reduce his sentence, which, again, is "an exceptionally high standard for

---

[2] Policy statements are binding in § 3582(c) proceedings. *United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011).

5

relief." *McCoy*, 981 F.3d at 288. "Congress has not defined what constitutes 'extraordinary and compelling reasons' for a sentence reduction[.]" *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021). The Sentencing Commission, however, provided six categories of extraordinary and compelling reasons in its corresponding policy statement: (1) medical conditions; (2) advanced age; (3) family circumstances; (4) physical or sexual abuse, under certain conditions, while incarcerated; (5) other reasons that "are similar in gravity" to the previous four; and (6) an unusually long sentence. U.S. Sent'g Guidelines Manual § 1B1.13(b) (U.S. Sent'g Comm'n 2025). Shields does not argue that his circumstances warrant a sentence reduction due to medical conditions, advanced age, family circumstances, or abuse. Therefore, the Court must determine whether the other reasons he puts forward constitute extraordinary and compelling reasons to justify a reduced sentence.

Shields urges the Court to grant his motion for a sentence reduction based on the following reasons, considered in conjunction with one another: (1) his "undisputably chaotic" upbringing (Rec. Doc. 683, at 2); (2) Amendment 829 to § 5H1.1 of the Sentencing Guidelines; (3) Shields's age at the time he committed the charged offenses; and (4) his rehabilitation and moral development over the last fifteen years in prison. Shields begins by describing his childhood. His father was absent, and his mother attempted to raise five children on her own. However, Shields explains that "[i]n reality no one raised him." *Id.* Further, he grew up surrounded by drugs and violence and began engaging in gang-related criminal activity at the age

6

of 15. Because he had no one "that would provide a positive influence in his life. . . . [h]is role models became the older gang members in his neighborhood." *Id.* at 3. Mr. Shields was 18–19 years old when he committed the offenses to which he pleaded guilty, and he argues that the Court should consider this fact, along with the other factors listed above, in determining whether to grant a sentence reduction.

First, the Court is deeply sympathetic to Mr. Shields's traumatic upbringing, but it does not constitute an extraordinary and compelling reason to reduce his sentence. Furthermore, "this information was already considered by Judge Feldman and the government, was factored into his plea agreement and is thoroughly outlined in Shields's PSR." (Rec. Doc. 620, at 15 (citing Rec. Doc. 419, at 39–40)).

Next, Mr. Shields argues that the Court should reduce his sentence based on his age at the time he committed the violent crimes to which he pleaded guilty. Specifically, he points to Amendment 829 to § 5H1.1 of the Sentencing Guidelines ("2024 Youthful Offender Amendment"), which amended the guideline to reflect that a "downward departure . . . may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses." U.S. Sent'g Guidelines Manual § 5H1.1 (U.S. Sent'g Comm'n 2025) (deleted by Amendment 836 on Nov. 1, 2025).[3] Further, as amended by Amendment 829, Section 5H1.1 acknowledged that "[c]ertain risk factors

---

[3] The United States Sentencing Commission deleted Section 5H1.1 in November of 2025, but the Court will consider Mr. Shields's argument about Amendment 829 because Section 5H1.1 was effective when he initially moved the Court for a sentence reduction. Additionally, "the history and characteristics of the defendant" remain factors that courts should consider when imposing a sentence. 18 U.S.C. § 3553(a)(1).

may affect a youthful individual's development into the mid-20's" and that "youthful individuals generally are more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop into young adulthood." *Id.*

As Mr. Shields points out, the Supreme Court also acknowledged these points in *Miller v. Alabama* when it held that a mandatory life sentence without the possibility of parole for a juvenile constitutes "cruel and unusual punishment" and hence violates the Eighth Amendment. *Miller*, 567 U.S. at 465. The *Miller* Court reasoned that mandatory life sentences prevent sentencing courts from considering the "mitigating qualities of youth." *Id.* at 476 (quoting *Johnson v. Texas*, 509 U.S. 350, 367 (1993)). The Court also relied on science showing that juvenile brains are not fully developed, and therefore, "juveniles have diminished culpability." *Id.* at 471.

Shields was only 18 and 19 years old when he committed the crimes he was charged with, and he argues that the rationale from *Miller* should apply to his case as well because "the distinguishing characteristics of youth . . . 'do not disappear when an individual turns 18.'" (Rec. Doc. 683, at 19 (quoting *United States v. Cruz*, No. 94-CR-112, 2021 WL 1326851, at *5 (D. Conn. Apr. 9, 2021))). The Court does not disagree with the science, but the Supreme Court's decision in *Miller* applies only to juveniles, and Mr. Shields had reached the age of majority when he committed the offenses to which he pleaded guilty. Moreover, the Government correctly points out that "*Miller* does not prohibit life sentences without parole for juveniles, but it prohibits mandatory life sentences without parole." (Rec. Doc. 689, at 11). As the

8

Court recognized when Mr. Shields filed his last motion for sentence reduction, it is tragic that he became involved in criminal activity at such a young age, but the Court cannot reduce his sentence on these grounds. Finally, the 2024 Youthful Offender Amendment to Section 5H1.1 that Mr. Shields cites is not retroactive, and the United States Court of Appeals for the Fifth Circuit has established that "a non-retroactive change in the law is not an extraordinary or compelling reason to reduce a prisoner's sentence." *United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025).

Mr. Shields also maintains that his "current sentence is longer than necessary . . . to achieve the objectives that a sentence be sufficient but not greater than necessary, to achieve the goals of sentencing as spelled out in 18 U.S.C. § 3582." (Rec. Doc. 683, at 7). He believes that if he were sentenced today, he would receive a less severe penalty than life imprisonment. However, this belief has no basis in the Sentencing Guidelines. In fact, considering Mr. Shields's adjusted offense level (44) and his criminal history category (I), he would almost certainly receive a life sentence under the Guidelines if sentenced today. Further, before he decided to plead guilty in 2011, Mr. Shields was facing the death penalty, which the government chose not to seek as part of the plea agreement with Mr. Shields, underscoring the fact that the life sentence Mr. Shields agreed to was itself a sentence reduction. Also, the Government chose to dismiss fifteen of the counts against Mr. Shields, including another murder charge. Considering that Mr. Shields agreed to a life sentence rather

9

than the death penalty, which the Government could have sought, the Court does not find the argument concerning the severity of his sentence persuasive.

Shields also urges the Court to grant a sentence reduction based on his moral development and rehabilitation while incarcerated. First, Mr. Shields wrote a letter to the Court expressing his "deepest remorse for the crimes [he] committed." (Rec. Doc. 683-1, at 33). He also points to his disciplinary record and the multiple rehabilitative and educational courses he has completed while in prison. Furthermore, he explains that he undertook this path of self-improvement without any expectation that he would ever be released, and he cites to several cases in which courts viewed such rehabilitation positively and granted compassionate release. These cases are distinguishable from Mr. Shields's case, however.

For example, in *Babb v. United States*, the United States District Court for the District of Maryland granted Babb's motion for a sentence reduction primarily based on 21 U.S.C. § 851, as amended by Section 401 of the First Step Act, concerning prior convictions and sentence enhancements. *Babb v. United States*, No. ELH-04-0190, 2021 WL 2315459, at *11 (D. Md. June 4, 2021). Specifically, the court concluded that if Babb were sentenced when his motion for compassionate release was decided, he would have received a mandatory minimum sentence of 15 years, as contrasted with the mandatory life sentence he received. *Id.* Accordingly, the court reduced Babb's

sentence to 30 years based on this "gross disparity," in addition to his exceptional rehabilitation and leadership. *Id.* at *20.

Next, in *United States v. Millan*, the defendant had served 28 years of his life sentence when the Southern District of New York reduced his sentence to time served. *United States v. Millan*, No. 91-CR-685, 2020 WL 1674058, at *1 (S.D.N.Y. Apr. 6, 2020). In reaching its decision, the court considered nearly fifty exhibits and Millan's exemplary conduct while incarcerated. *Id.* at *9–14. Millan had completed over "7,600 hours of [BOP] programming and apprenticeships," and he also earned an associate's degree from a community college while in prison. *Id.* at *9. Further, Millan served as a leader in the religious community at the prison, in addition to devoting himself to a program aimed at helping at-risk youth. *Id.* at *12–14. Multiple BOP staff members wrote glowing letters in support of Millan's motion, *id.* at *14, and the court made a point to mention that Millan had been sentenced to life as a non-violent, first-time offender, *id.* at *8.

Currently, Mr. Shields has served approximately 15 years of his life sentence, unlike Babb and Millan who had both served over 25 years at the time they were granted a sentence reduction. In Babb's case, a change in the law also significantly reduced the mandatory minimum sentence Babb would have received—on the other hand, the non-retroactive amendment to Section 5H1.1 of the Sentencing Guidelines in this case is simply not analogous. Finally, unlike Millan who was a non-violent,

11

first-time offender when he was sentenced, Mr. Shields was implicated in three murders.

The Court applauds Mr. Shields's diligent efforts at self-improvement, as evidenced by his completion of at least 25 BOP courses. Mr. Shields also explained in his memorandum that he serves as a role model and support system to the other men with whom he is incarcerated, and he says that he "has devoted significant time and effort to the Challenge Program, first as a participant and then as a mentor." (Rec. Doc. 683, at 13). However, Mr. Shields does not specify how much time he has committed to the Challenge Program, nor does he provide any specific details about the positive impacts the BOP rehabilitative programs have had on him, or that he has had on others. Mr. Shields's commendable participation in the rehabilitative opportunities available to him simply does not rise to the same level as Babb's and Millan's, nor does it constitute an extraordinary and compelling reason that would warrant a sentence reduction, even when considered in conjunction with other factors.

The Court would like to extol Mr. Shields for the progress he has made and sincerely hopes that he will continue to seek out opportunities to better himself and his community.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Darryl Shields' *Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582 Based on Changes to the Guidelines Related to Youth, the First Step Act, the Extraordinary Rehabilitation by Mr. Shields, His Age at the Time of the Crime, and the Fact That He Is No Longer a Threat to Public Safety* **(Rec. Doc. 683)** is **DENIED**.

New Orleans, Louisiana, this 5th day of March, 2026.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE